**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Criminal Action |
| ) | No. 07-03019-01-CR-S-RED |
| ) | |
| DANIEL SOUDER, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b), the above-styled criminal action was referred to the undersigned for preliminary review. This matter comes before the Court on defendant's Motion to Suppress, to which the government has responded.

Defendant asserts that evidence and statements seized as a result of a traffic stop should be suppressed. A hearing was held before the undersigned on December 14, 2007. Defendant was represented by counsel, Dee Wampler, and the government was represented by Assistant United States Attorney Richard E. Monroe.

The government called Ava Police Officer Trent Murray as its first witness. On May 23, 2006, he was on-duty, at the intersection of Highways 14 and 5, and observed defendant run a red light. He initiated the emergency lights on his vehicle, and stopped the driver. When he walked up to the vehicle to talk to defendant, he observed a rifle lying in the back seat of the vehicle. When he saw the rifle he was standing next to the driver, and the rifle was directly behind the driver on the

1

back seat. Officer Murray issued a traffic citation to defendant. Defendant told him the rifle had been given to him as a gift. Officer Murray took possession of the weapon to determine whether it was of legal length. He released defendant after having given him the ticket. Defendant did not contest the ticket.

On cross examination, the officer testified that it was his understanding that defendant did not appear for the ticket. Therefore, there was no plea of guilty. The record indicates that defendant failed to appear, and the Court took the bond. Defendant, at some point, admitted to the officer that he was probably driving too fast to stop. Defendant did not make any other statements other than mentioning that the rifle was a gift. As far as the infraction itself, when the light turned red, Officer Murray testified that defendant was in the intersection, although he could not say exactly how far. Regarding the weapon, he asked defendant if he knew whether the rifle was legal or illegal, and he said that he didn't know. He did not recall if he asked him why it was in the vehicle, but defendant did tell him that he had it to ward off animals that came around his chicken house. He knows defendant, but did not know that it was him he was stopping at the exact moment of the stop. The weapon was not concealed in any way, but rather, was in plain view. Officer Murray admitted that defendant did not make any furtive movement to conceal the weapon. The officer took the weapon to the Ava Police Department after he seized it. He never advised defendant of his Miranda rights. The officer acknowledged that he used emergency equipment, stopped defendant, and gave him a citation for the traffic light. He was satisfied that he wasn't wanted on any charges, and he believed he was a legal driver. The officer noticed defendant's vehicle because of excessive speed noise from his tires and the fact that the vehicle came towards him at a high rate of speed. As it passed by, he pulled behind it, and it continued on through the red stoplight. At the time he saw defendant run the

stoplight, he was on Northwest 12th Street.

Officer Murray stated that he had never seen the weapon before, but he had seen defendant earlier, at a time when he was off-duty. Defendant asked him about the legal length of a weapon, and the officer advised him that he didn't know what the legal length was, but he would check on it for him. He did not remember that defendant told him he had such a weapon. He did not think that when he saw defendant that night he recalled having had the conversation with him. He just remembers that when they talked about barrel length of weapons, he was not on duty. He thought someone else was present with defendant, but does not recall who it was. Since that time, he just remembers one conversation where defendant asked him if he remembered talking to him earlier, which he did not.

The second witness for the government was Kathleen Aug, Special Agent with the Department of Alcohol, Tobacco, and Firearms. She is the case agent on this case. She testified that there is no record in the National Firearms Registration and Transfer Record for defendant or for that weapon. There is a requirement for registration and license for this size of weapon to manufacture and possess it. She spoke to defendant with the state Fire Marshall, John Matney, on January 26, 2007, at which time he was read his Miranda warnings. He agreed to speak to them. He said someone gave him the gun, and he used it to shoot varmints who were killing his chickens. Agent Aug testified that defendant told her he cut down the barrel length so that he could get it out of his car window because he would come home and there would be possums killing his chickens. He told her he did not know about any registration or license, and had not registered the weapon.

On cross examination, Agent Aug testified that Officer Matney was also there at the interview with defendant, because the purpose of questioning him was about an arson and the rifle.

3

The Fire Marshall read him his rights and he signed the form, which was from the Fire Marshal's office. There is not a specific sentence on the form that says he waived his Miranda warning rights, but the form indicates that it is a waiver, and the rights are explained. He signed the form at the Ava Police Department when they interviewed defendant. The officers were in uniform and they showed him their badges. She's never compared the Fire Marshall form with theirs. The statement defendant gave was consistent with what he had told Officer Murray. Officer Matney and she both questioned defendant, starting with questions about the arson. She thinks she told him that they wanted to ask him about the weapon, as well as the arson.

Defendant called Scotty Smith to the witness stand. He has lived in Ava for many years, and is disabled. On the day in question, he was at the intersection of Highways 5 and 14 where defendant was stopped. He and his wife were eating at Subway, and were visiting with defendant. They were leaving at about 10:00 p.m. because the restaurant was closing He saw defendant leave the restaurant. When defendant pulled out, he accelerated and made his tires squeal. Mr. Smith was in his small pickup truck behind him. Defendant was ahead of him, and he saw defendant at the top of the hill, where Officer Murray was parked in the bank parking lot. He could clearly see the intersection and could see the stoplight. He saw defendant's vehicle enter the intersection on a yellow light. When he saw the officer pull out, he knew they were going to pull him over for the tires because he knew the noise could have been heard. The light turned red as defendant was under it. He just made a mental note to himself that they were going to give defendant a ticket for the squealing. He passed by the vehicle after defendant had been stopped. There was not much traffic, and he did not think that defendant posed a danger.

On cross-examination, the witness testified that bought the firearm in question. He gave it

4

to defendant as a present for his birthday. He had not sawed it off or modified it before giving it to defendant, so it was in the condition that it was in when it came from the factory. He is a friend and cousin of defendant's.

On redirect examination, the witness testified that the prescription medication he takes does not affect his mind or his memory. He stated that he was not falsifying his testimony in anyway.

The next witness called by defendant was Kate Smith, the wife of Scotty Smith. She reiterated her husband's testimony about what occurred on the day in question. She is only related to defendant by marriage. Her husband does not abuse his prescribed medication in anyway. They were not under the influence of alcohol that night, and she wasn't taking any medication then or now. When she was at the top of the hill, she could see downhill to the light. The light was yellow when defendant went through it, and then it turned red. She heard his tires squeal, although she didn't think any persons were in danger because there was not much traffic. She saw defendant pulled over and saw the two police cars there.

It is defendant's contention that he was detained and arrested without reasonable suspicion and probable cause that he violated any law. He also contends that the stop was pretextual, that there was a warrantless search, and that even if he consented to the search, the initial detention was illegal. Therefore, he asserts that the evidence should be suppressed.

The government asserts that the traffic stop was lawful, because defendant disregarded a red light. It is further asserted that the illegal rifle was in plain view on the seat of defendant's vehicle, and additionally, that Officer Murray had a right to insure his own safety and to seize a weapon within the grasp of defendant.

The law is well-established that a traffic violation provides an officer with probable cause

5

to stop a vehicle, regardless of the severity of the violation. United States v. Jones, 275 F.3d 673, 680 (8th Cir. 2001); United States v. Enriquez Luna, 368 F.3d 876, 878 (8th Cir. 2004). In this case, despite the testimony from the Smiths, the credible evidence establishes that the officer observed defendant commit a traffic violation by running a red light. Regardless of the Smiths' perception of the incident, they did not share the same, close vantage point that Officer Murray had. Additionally, it must be noted that they are relatives of defendant, and might not be unbiased. They did agree that defendant pulled out of the Subway parking lot onto the highway at a speed that caused his tires to squeal, and they also concurred that the light was red at some point when defendant passed through it. Additionally, defendant does not deny that he did not challenge the ticket at the scene, nor in court, and admits that he forfeited a bond by failing to appear for the ticket. Based on the testimony adduced at the hearing and applicable case law, the Court finds, initially, that there was a valid traffic stop.

Although defendant attempts to create doubt as to the officer's purpose in stopping him, based on an earlier conversation regarding legal length of weapons between the two, the evidence adduced at the hearing did not support that speculative theory. The law is clear, moreover, that a stop is not considered pretextual, even if law enforcement did have an ulterior motive for the stop, as long as there was a legitimate, objective basis for the stop in the first instance. United States v. Rehkop, 86 F.3d 304-05 (8th Cir. 1996). The evidence satisfies the Court there was a legitimate basis for the stop.

Once a valid traffic stop occurs, the investigating officer is entitled to conduct an investigation reasonably related in scope to the circumstances that justified the initial stop. Terry v. Ohio, 392 U.S. 1 (1968). Law enforcement officers may briefly detain an individual for

6

Case 6:07-cr-03019-DW   Document 37   Filed 01/04/08   Page 6 of 8

investigative purposes if they have a reasonable and articulable suspicion of criminal activity. United States v. Bustos-Torres, 396 F.3d 935, 942 (8th Cir. 2005), quoting Terry, 392 U.S. at 25-31. It is also clear that where an individual is detained after an initial lawful stop, the question is whether the detention was "reasonably related in scope to the circumstances which justified the interference in the first place." United States v. Cummins, 920 F.2d 498, 502 (8th Cir. 1990). In determining whether reasonable suspicion exists, the Court should consider the totality of the circumstances in light of the officers' experience and specialized training. United States v. Arvizu, 534 U.S. 266, 273 (2002).

In this case, the testimony from Officer Murray established that he saw the weapon in question in plain view when he walked up to defendant's car to talk to him about the traffic violation. Clearly, the officer had the legal right to conduct a short investigation at the time of the stop. Defendant does not dispute that the weapon was lying on the seat, unconcealed. Additionally, defendant admitted that it was his, at the time of the stop. He was briefly detained on the scene. In the course of conducting the stop, the officer asked defendant if he knew whether the rifle was of legal length. Defendant said he didn't know, and volunteered that he had received it as a gift. He also admitted at some point that he was probably going too fast. There is no evidence that the stop at the scene of the traffic violation exceeded the scope of a valid Terry stop. The fact that the officer observed the weapon, which appeared to be of illegal length, in plain view, and seized it, was within the scope of the stop as well. Additionally, given that the officer was outside the vehicle when he observed the weapon, there is no basis to conclude that there was an illegal search. At that point, the officer was confronted with a situation in which he saw what he believed to be an illegal weapon in plain view, inside a vehicle where defendant was seated, and close enough to grasp had he

7

intended to do so. Therefore, a short, further detention and seizure of the rifle was appropriate under Terry, based on heightened suspicion of criminal activity.

Regardless of defendant's efforts to challenge the waiver of his rights at a later interview, the evidence adduced at the hearing establishes that he was properly Mirandized, that he indicated that he understood his rights, and then he freely admitted to having shortened the barrel on the rifle.

Having fully reviewed the testimony at the hearing, the arguments of the parties, and the relevant case law, the Court finds that it must be recommended that defendant's motion to suppress be denied. It is clear that there was a valid traffic stop in this case, that the subsequent detention for investigative purposes was within the purview of Terry, and that the officer lawfully seized an illegal weapon, which was in plain view.

Accordingly, it must be recommended that defendant's Motion to Suppress be denied.

For the foregoing reasons, it will be

RECOMMENDED that defendant's Motion to Suppress be denied.

/s/ James C. England
JAMES C. ENGLAND, CHIEF
UNITED STATES MAGISTRATE JUDGE

DATE:      1/4/08

8

Case 6:07-cr-03019-DW   Document 37   Filed 01/04/08   Page 8 of 8